Case No. 11-56918

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

Jeanne Drake, et al

*Plaintiffs — Appellants*

v.

Option One Mortgage Corporation, et al

*Defendants — Appellees*

*Appeal from a Judgment of the United States District Court for the Central District of California*

*No. 8:09-cv-01450-CJC(RNBx)  ~  Honorable Cormac J. Carney*

## APPELLANTS' REPLY BRIEF

MOWER & CARREON, LLP
Patrick A. Carreon, Cal. State Bar No. 119576
James A. Burton, Cal. State Bar No. 149253
8001 Irvine Center Drive, Suite 1450
Irvine, CA 92618
Tel:  (949) 474-3004
Fax:  (949) 474 9001
Attorneys for Plaintiffs - Appellants

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................iii-ix

I.     INTRODUCTION .............................................................................1

II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA ...................2

III.   PLAINTIFFS DID NOT ENTER INTO FULLY OR PARTIALLY
       INTEGRATED EXPRESS EMPOLOYMENT CONTRACTS; THE
       PAROL EVIDENCE RULE IS INAPPLICABLE...........................................7

IV.    PLAINTIFFS' IMPLIED-IN-FACT CONTRACT CLAIMS DO NOT
       VARY THE TERMS OF THEIR EXPRESS EMPLOYMENT
       CONTRACTS...................................................................................10

V.     PLAINTIFFS' IMPLIED-IN-FACT CONTRACT CLAIMS DO NOT
       MODIFY OR AMEND THE TERMS OF THEIR EXPRESS
       EMPLOYMENT CONTRACTS..................................................................11

VI.    PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO
       WITHSTAND SUMMARY JUDGMENT ON THEIR IMPLIED-IN-
       FACT CONTRACT CLAIMS AGAINST OPTION ONE...........................14

       A.    The District Court Placed An Incorrect Burden Of Proof On
             Plaintiffs...........................................................................14

       B.    The Pre-Existing Severance Policy Is Sufficiently Definite And
             Certain ..............................................................................15

VII.   PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO
       WITHSTAND SUMMARY JUDGMENT ON THEIR
       PROMISSORY FRAUD CLAIMS AGAINST OPTION ONE ...................17

VIII.  PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO
       WITHSTAND SUMMARY JUDGMENT ON THEIR LABOR
       CODE AND UCL CLAIMS AGAINST OPTION ONE ..............................18

IX.    PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO
       WITHSTAND SUMMARY JUDGMENT ON THEIR
       INTENTIONAL INTERFERENCE CLAIMS AGAINST BLOCK .............28

i

X.    SEVERANCE IS A VESTED BENEFIT UNDER CALIFORNIA
      LAW ...................................................................................................25

XI.   CONCLUSION AND REQUESTED RELIEF ..............................................30

CERTIFICATE OF COMPLIANCE .....................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alling v. Universal Manufacturing Corp.*
    5 Cal.App.4th 1412 (1992) .................................................................7

*Amaral v. Cintas Corp. No. 2*
    163 Cal.App.4th 1157 (2008) ............................................. 19

*American Industrial Sales Corp. v. Airscope, Inc.*
    44 Cal.2d 393 (1955) .............................................................9

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 106 S.Ct. 2505 (1986) .................................. 14

*Asmus v. Pacific Bell*
    23 Cal.4th 1 (2000) ............................................................. 29

*Baccei v. United States*
    632 F.3d 1140 (9th Cir. 2011) ........................................ 16, 18

*Barnhill v. Robert Saunders & Co.*
    125 Cal.App.3d 1 (1981) ................................................... 19

*Biren v. Equality Emergency Medical Group*, Inc.
    102 Cal.App.4th 125 (2002) .............................................. 13

*Bogue v. Ampex Corp.*
    976 F.2d 1319 (9th Cir.1992) ......................................... 4, 5

*Bolling v. Clevepack Corp.*
    484 N.E.2d 1367 (Ohio App. 1984) .............................. 28, 29

*Botany Mills, Inc. v. Textile Workers Union of America*
    141 A.2d 107 (N.J. App. 1958) .......................................... 29

*Brawthen v. H & R Block, Inc.*
    28 Cal.App.3d 131 (1972) ...................................................9

*Cabanas v. Gloodt Assocs.*
942 F.Supp 1295 (1996) ................................................... 21

*Camp v. Jeffer, Mangels, Butler & Marmano*
35 Cal.App.4th 620 (1995) .............................................. 10

*Chapin v. Fairchild Camera and Instrument Corp.*
31 Cal.App.3d 192 (1973) .......................................... 26, 27

*Chiganti v. 12 Phone Intern., Inc.*
635 F.Supp.2d 1074 (N.D. Cal. 2007) ............................... 24

*Chinn v. China Nat. Aviation Corp.*
138 Cal.App.2d 98 (1955) .......................................... 26, 27

*Collins v. Victor Manor, Inc.*
47 Cal.2d 875 (1957) ..................................................... 21

*Culcal Styleco, Inc. v. Vornado, Inc.*
26 Cal.App.3d 879 (1972) ............................................... 21

*Daugherty Co. v. Kimberly-Clark Corp.*
14 Cal.App.3d 151 (1971) ............................................... 13

*Delaye v. Agripac, Inc.*
39 F.3d 235 (9th Cir.1994) ......................................... 3, 4, 5

*Diamond Woodworks, Inc. v. Argonaut Ins. Co.*
109 Cal.App.4th 1020 (2003) .......................................... 13

*Donovan v. Branch Banking and Trust Co.*
220 F.Supp.2d. 560 (S.D. W.Va. 2002) ............................... 6

*Ellis v. Klaff*
96 Cal.App.2d 471 (1950) ................................................. 9

*Enrico Farms, Inc. v. H.J. Heinz Co.*
629 F.2d 1304 (9th Cir.1980) ............................................ 8

*EPA Real Estate Partnership v. Kang*
 12 Cal.App.4th 171 (1992) ........................................................8

*Esbensen v. Userware Internat., Inc.*
 11 Cal.App.4th 631 (1992) ........................................................8

*Estate of Gaines*
 15 Cal.2d 255 (1940) ........................................................7

*FSLIC v. Quinn*
 711 F.Supp. 366 (N.D. Ohio 1989) ........................................... 25

*GHK Associates v. Mayer Group, Inc.*
 24 Cal.App.3d 856 (1990) ............................................ 24

*Grey v. American Management Services*
 204 Cal.App.4th 803 (2012) ........................................7

*Helle v. Landmark, Inc.*
 472 N.E.2d 765 (Ohio App. 1984) ........................................... 29

*Hercules Powder Co. v. Brookfield*
 53 S.E.2d 804 (Va. App. 1949) ........................................... 29

*Horton v. Prepared Media Lab., Inc.*
 997 P.2d 864 (Or. App. 2000) ........................................... 29

*Imperial Ice Co. v. Rossier*
 18 Cal.2d 33 (1941) ............................................ 24

*In re Jeannette Corp.*
 118 B.R. 327 (W.D. Pa. 1990) ........................................... 29

*In re Joy Global, Inc.*
 381 B.R. 603 (D.C. Del. 2007) ........................................... 29

*Joanou v. Coca-Cola Co.*
 26 F.3d 96 (9th Cir. 1994) ........................................... 25

*Johnson v. Allied Stores Corporation*
    679 P.2d 640 (Id. App. 1984) ............................................................ 29

*Kanne v. Connecticut General Life Ins.*
    867 F.2d 489 (9th Cir.1988) ........................................................ 2, 3

*Korea Supply Co. v. Lockheed Martin Corp*
    29 Cal.4th 1134 (2003) .................................................................. 23

*Kozlowsky v. Westminster Nat'l Bank*
    6 Cal.App.3d 593 (1970) ................................................................ 21

*Kulins v. Malco*
    459 N.E.2d 1039 (Ill. App. 1984).............................................. 28, 29

*Ladas v. Cal. State Auto Ass'n*
    19 Cal.App.4th 761 (1993) ............................................................. 15

*Langdon v. Saga Corp.*
    569 P.2d 524 (Okl. App. 1976)....................................................... 29

*Lawson v. Lawson*
    208 Cal.App.3d 446 (1989) ............................................................ 26

*Lowell v. Mother's Cake & Cookie Co.*
    79 Cal.App.3d 13 (1978) ................................................................ 24

*Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*
    809 F.2d 617 (9th Cir.1987) ............................................................3

*Masterson v. Sine*
    68 Cal.2d 222 (1968) .......................................................................8

*McLain v. Great American Ins. Companies*
    208 Cal.App.3d 1476 (1989) .................................................. 8,n 10

*Modelewski v. Resolution Trust Corp.*
    14 F.3d 1374 (9th Cir. 1994) ......................................................... 25

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*
    80 Cal.App.4th 666 (2000) .................................................. 13

*Owens v. Press Publishing Co.*
    120 A.2d 442 (N.J. App. 1956) ......................................... 29

*Parker v. Kraft Foods Global, Inc.*
    2010 WL 1929555 (W.D. N.C. 2010) ................................. 25

*Patel v. Sugen, Inc.*
    354 F.Supp.2d 1098 (C.D. Cal. 2005) ...................................3

*Penna v. Toyota Motor Sales, USA, Inc.*
    11 Cal.4th 376 (1995) ...................................... 21, 22, 23

*Powell v. California Dept. of Employment*
    63 Cal.2d 103 (1965) ......................................................... 25

*Quelimane Company., Inc. v. Stewart Title Guarantee Co.*
    19 Cal.4th 26 (1998) ........................................ 21, 22, 23

*Reichelt v. Emhart Corp.*
    921 F.2d 425 (2d Cir. 1990) ............................................ 25

*Richardson v. La Rancherita*
    98 Cal.App.3d 73 (1979) ................................................. 24

*Sade Shoe Co. v. Oschin & Snyder*
    162 Cal.App.3d 1174 (1984) ....................................... 21, 22

*Shapiro v. Wells Fargo Realty Advisors*
    152 Cal.App.3d 467 (1984) .............................................. 10

*Sicor Ltd. v. Cetus Corp.*
    51 F.3d 848 (9th Cir. 1995) ...............................................8

*Southern California Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir. 2003) ............................................ 21

*Stonebrae, L.P. v. Toll Bros., Inc.*
  2008 WL 2157000 (N.D. Cal. 2008) ...................................... 21, 22, 23

*Suastez v. Plastic Dress-Up Co.*
  31 Cal.3d 774 (1982) ......................................................... 26, 27

*Tomlinson v. Qualcomm, Inc.*
  97 Cal.App.4th 934 (2002) ...................................................... 11

*Velarde v. PACE Membership Warehouse, Inc.*
  105 F.3d 1313 (9th Cir. 1997) ........................................... 3, 4, 5

*Wagner v. Glendale Adventist Med. Center*
  216 Cal.App.3d 1379 (1989) ............................................. 7, 13

*Wallis v. Farmers Group, Inc.*
  220 Cal.App.3d 718 (1990) .................................................... 10

*Wanland v. Los Gatos Lodge, Inc.*
  230 Cal.App.3d 1507 (1991) ................................................. 24

*Webber v. Inland Empire Investments*
  74 Cal.App.4th 884 (1999) ...................................................... 24

*Weddington Prod., Inc. v. Flick*
  60 Cal.App.4th 793 (1998) ............................................... 15, 16

*Woods v. Fox Broadcasting Sub., Inc.*
  129 Cal.App.4th 344 (2005) ................................................... 21

## Statutes

Cal. Code of Civil Procedure § 1856 ..............................................7

Cal. Labor Code § 203 ............................................................ 19

ERISA ....................................................................... 2, 3, 5, 6

UCL......................................................................... 18, 19

8 C.C.R. § 13520 .......................................................................... 19

## Other Authorities

Restatement (First) of Torts § 769, comment d........................................... 23

Restatement (Second) of Torts § 769, comment b ....................................... 23

Schwartzer, Tashima & Wagstaff
CAL PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL
Section 14:27.1, pg. 1410 (The Rutter Group 2011) .................................... 14

## I.    INTRODUCTION

Option One and Block's Answering Briefs provide no legitimate basis for affirming the District Court's summary judgment in this case.  Given the disputed factual record, this Court cannot make a determination, as a matter of law, that the Pre-Existing Severance Policy falls within the ambit of ERISA and therefore preempts all of Plaintiffs' claims.  Given the disputed factual record, this Court also cannot make a determination, as a matter of law, that the written offer letters Plaintiffs executed with Option One were fully or partially integrated with respect employee benefits, let alone severance benefits.  Accordingly, the parol evidence rule has no application in this case.  It is also undisputed that the written offer letters are entirely silent with regard to severance.  In light of that fact, this Court cannot conclude, as a matter of law, that the Pre-Existing Severance Policy alters or varies the express terms of the offer letters.  Likewise, Plaintiffs' assertion of an implied-in-fact contract based on the Pre-Existing Severance Plan does not modify the offer letters and, in any event, substantial evidence shows Option One waived the offer letters' written modification requirement.

Besides the foregoing threshold matters, the District Court placed on Plaintiffs an incorrect, and insurmountable, summary judgment burden of proving "that an implied-in-fact term of their employment agreements with Option One gave them a contractual entitlement to severance pay *in the specific circumstances*

1

*of being transferred from Option One to comparable employment with AHMSI after an asset sale.*" As framed by the pleadings, the existence of such a specific contractual entitlement was not "material" to Plaintiffs' implied-in-fact contract theory of the case. Viewed through the prism of the proper theory, i.e., the theory that Plaintiffs actually alleged and framed in the pleadings, it cannot reasonably be denied that Plaintiffs submitted sufficient evidence to withstand summary judgment on their breach of implied-in-fact contract claim against Option One. Given the foundational premise of the District Court's order, i.e., that all of Plaintiffs' claims were derivative of the implied-in-fact contract with Option One, Plaintiffs' evidence was also generally sufficient to withstand summary judgment on all other claims. Lastly, Plaintiffs again submit that, if squarely presented with the issue, the California Supreme Court would hold that severance is a "vested" benefit under California law and that, accordingly, the OOMC Severance Plan could operate prospectively only and could not interfere with and work a retroactive forfeiture of the benefits Plaintiffs had already earned and accrued under the Pre-Existing Severance Policy.

## II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA

Option One and Block's claim of ERISA preemption is a federal affirmative defense in this lawsuit. The burden was on them to prove all the facts necessary to establish it. *Kanne v. Connecticut General Life Ins.*, 867 F.2d 489, 492 nt. 4 (9th

Cir.1988). "[A] relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir. 1997); *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir.1994). This is a question of degree. *Patel v. Sugen, Inc.*, 354 F.Supp.2d 1098, 1106 (C.D. Cal. 2005). It is also a question of fact, to be answered in light of all the surrounding circumstances. *Kanne, supra*, 867 F.2d at 492; *Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987).

The factual record is disputed with respect to the benefit eligibility trigger of the Pre-Existing Severance Policy. Thus, this Court cannot find, as a matter of law, that the Pre-Existing Severance Policy is an ERISA plan. On summary judgment, such a determination can only be made "on an undisputed factual record regarding the plan." *Patel, supra,* 354 F.Supp.2d at 1106. Taking Plaintiffs' evidence as true and drawing all reasonable inferences from the evidence in Plaintiffs' favor, the Pre-Existing Severance Policy contemplated a one-time, lump sum payment of benefits, the amount of which was determined from a straightforward mathematical computation, triggered by the single event of "separation" from Option One. Even assuming the eligibility trigger advocated by Option One and Block applied, Julie Fletcher nevertheless testified that, once it was determined an employee was going to lose their position with Option One

3

through a layoff or reduction in force, it was a foregone conclusion they were eligible for benefits under the Pre-Existing Severance Policy. Under these facts, determining benefit eligibility under the Pre-Existing Severance Policy, as well as calculating benefit amounts, did not require an ongoing administrative scheme for discretionary decision-making.

Option One and Block's reliance on *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992) is misplaced. In *Bogue*, severance payments were conditioned upon whether the employees were able to obtain "substantially equivalent employment" with the parent company or the purchaser of the subsidiary. It was the need for a determination of "substantial equivalence" that the court concluded required an administrative scheme. *Bogue, supra*, 976 F.2d at 1323. The present case is more akin to *Delaye v. Agripac*, 39 F.3d 235 (9th Cir.1994) and *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313 (9th Cir.1997), wherein this Court held that an ongoing administrative scheme is not required simply because there is the need to resolve whether a termination was "for cause."

In *Delaye*, the plaintiff's employment contract provided that if he was terminated without cause his employer would pay him a fixed monthly amount for twelve to twenty four months according to a set formula, as well as provide him with some continuing benefits during that same period. In overturning the district

4

court's conclusion that the employment contract constituted an ERISA plan, this

Court distinguished its decision in *Bogue*:

> Delaye's contract does not implicate an ongoing administrative scheme.
> Once Agripac decided to terminate Delaye, the severance calculation
> became one akin to that in *Fort Halifax*-a straightforward computation of a
> one-time obligation.  The obligation was either to pay Delaye his regular
> salary prorated to the date of his termination, if he was terminated for cause;
> or pay him a fixed monthly amount for twelve to twenty-four months
> according to a set formula, plus accrued vacation pay and insurance benefits,
> if he was terminated without cause.  While payment could continue for as
> long as two years, there is nothing discretionary about the timing, amount or
> form of the payment.  Sending Delaye, a single employee, a check every
> month plus continuing to pay his insurance premiums for the time specified
> in the employment contract does not rise to the level of an ongoing
> administrative scheme.  *Delaye, supra,* 39 F.3d at 237.

In *Velarde*, this Court extended its holding in *Delaye* to circumstances which

arguably presented even more compelling support for ERISA preemption.  In

*Velarde*, plaintiffs were offered severance benefits in a "Stay On Letter."  These

benefits were conditioned upon meeting two eligibility requirements: (1) that the

employee performs his duties in a satisfactory manner; and (2) that the employee

not be terminated "for cause."  Nonetheless, this Court held that the Stay On Letter

did not create a ERISA plan:

> Here, as in *Delaye*, the employer was simply required to make a single
> arithmetical calculation to determine the amount of the severance benefits.
> While in both cases, a "for cause" termination would change the benefits due
> to the employee, the *Delaye* court did not deem this minimal quantum of
> discretion sufficient to turn a severance agreement into an ERISA plan.

Contrary to PACE's assertions, the key to our holding in *Bogue* was that there was "enough ongoing, particularized, administrative discretionary analysis," 976 F.2d at 1323 (emphasis added), to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan. *Velarde, supra,* 105 F.3d at 1317; see also *Donovan v. Branch Banking and Trust Co.*, 220 F.Supp.2d. 560, 566 (S.D. W.Va. 2002) (citing *Velarde* and holding that need for a "for cause" determination is insufficient to turn a simple severance agreement into an ERISA plan).

Like the "for cause" determination in *Delaye* and *Velarde*, the level of discretion, if any, Option One was required to exercise in determining whether a "separation" from Option One occurred, or whether an employee was losing their job with Option One due to a layoff or reduction in force, was slight at best and failed to rise to the level of ongoing particularized discretion required to transform the Pre-Existing Severance Policy into an ERISA plan. The calculation of benefit amounts was determined from a straightforward mathematical computation involving no discretion and, since payments were made in a single lump sum, there was no need for an ongoing administrative scheme to manage periodic payments over an extended period of time. Based on the foregoing record, this Court cannot hold, as a matter of law, that the Pre-Existing Severance Policy was an ERISA plan.

## III.  PLAINTIFFS DID NOT ENTER INTO FULLY OR PARTIALLY INTEGRATED EXPRESS EMPLOYMENT CONTRACTS; THE PAROL EVIDENCE RULE IS INAPPLICABLE

Relying on *Grey v. American Management Services*, 204 Cal.App.4th 803 (2012), Option One and Block contend that purportedly "integrated" offer letters from Option One, which each Plaintiff signed, foreclose Plaintiffs' implied-in-fact contract claims.  This argument fails.  The offer letters are not "integrated" with respect to severance terms.  Accordingly, the parole evidence rule is inapplicable in this case.

The parol evidence rule is codified at Code of Civil Procedure section 1856. It generally prohibits the introduction of extrinsic evidence of any prior or contemporaneous oral agreement to vary, alter or add to the terms of an integrated written instrument.  *Estate of Gaines*, 15 Cal.2d 255, 264-265 (1940); *Hale v. Bohannon*, 38 Cal.2d 458, 465 (1952); *Alling v. Universal Manufacturing Corp.*, 5 Cal.App.4th 1412, 1433 (1992).  The central question in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement.  *Wagner v. Glendale Adventist Med. Center*, 216 Cal.App.3d 1379, 1386 (1989).  In considering the issue, the court must consider the writing itself, including whether the written agreement appears to be complete on its face; whether the agreement contains an integration clause;

7

whether the alleged parol understanding on the subject matter at issue might naturally be made as a separate agreement; and the circumstances at the time of the writing. *Masterson v. Sine*, 68 Cal.2d 222, 225–226 (1968); *Esbensen v. Userware Internat., Inc.*, 11 Cal.App.4th 631, 637, nt. 3 (1992).

Contrary to Option One and Block's position, the holding in *Grey* does not render the integration clause in the offer letters conclusive on the issue. Inclusion of an integration clause in the written contract is but one factor in the analysis. It is not controlling. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) (citing *Enrico Farms, Inc. v. H.J. Heinz Co.*, 629 F.2d 1304, 1306 (9th Cir.1980), citing *Masterson v. Sine*, 68 Cal.2d 222 (1968)). Whether a contract is integrated is a question of law *when the evidence of integration is not in dispute. EPA Real Estate Partnership v. Kang*, 12 Cal.App.4th 171, 176 (1992); *Esbensen v. Userware Internat., Inc., supra*, 11 Cal.App.4th at 638, nt. 4.

The offer letters were not integrated with respect to employee benefits, let alone severance benefits. The offer letters were prepared from two-page standardized templates.[1] This militates against a finding of integration. See *McLain v. Great American Ins. Companies*, 208 Cal.App.3d 1476, 1485 (1989) (contract not integrated in part because it consisted of a preprinted form drafted

---

[1] ER III 443:2-444:25.

solely by Great American); *Brawthen v. H & R Block, Inc.*, 28 Cal.App.3d 131, 138-139 (1972) (employment agreement not integrated in part because it consisted of a two-page mimeographed form).  The offer letters are also incomplete on their face.  They state that "[t]his letter, *together with the documents referenced herein,* contain all of the agreements and understanding regarding your employment." However, the offer letters do not reference any other documents.  The italicized language, coupled with the absence of any referenced documents, indicates the two-page standardized offer letters were not intended to be the complete and exclusive embodiment of the parties' agreement.  Julie Fletcher, Option One's Vice President of Human Resources, also testified that the offer letters did not spell out all benefits employees at Option One were entitled to receive and, as Option One admits, the offer letters are completely silent with regard to severance benefits.[2]  It has long been recognized that the parol evidence rule does not render inadmissible proof of agreements collateral to a written contract where the latter is either incomplete or silent on the subject.  See *American Industrial Sales Corp. v. Airscope, Inc.*, 44 Cal.2d 393, 397 (1955); *Ellis v. Klaff*, 96 Cal.App.2d 471, 476 (1950).  As admiited by Option One and Block, the offer letters also provide that they can be amended "in writing by the Vice President, Human Resources of Option One Mortgage."  A provision for amendments or modifications by

---

[2] ER III 451:22-452:18.

9

subsequent written agreements militates against a finding of integration. See *McLain v. Great Am. Ins. Cos.*, 208 Cal.App.3d 1476, 1485 (1989); *Wallis v. Farmers Group, Inc.*, 220 Cal.App.3d 718, 730 (1990). Based on the foregoing, this Court cannot rule as a matter of law that the offer letters were integrated.

## IV. PLAINTIFFS' IMPLIED-IN-FACT CONTRACT CLAIMS DO NOT VARY THE TERMS OF THEIR EXPRESS EMPLOYMENT CONTRACTS

Option One cites *Camp v. Jeffer, Mangels, Butler & Marmano*, 35 Cal.App.4th 620, 630 (1995) for the general principal of law that courts will not imply an employment agreement if doing so necessarily varies or contradicts the terms of an express written employment agreement. "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 482 (1984). In the present case, it is undisputed that the offer letters are silent with regard to severance benefits. Therefore, the offer letters and the Pre-Existing Severance Policy do not embrace the same subject or require different results. Implying a contractual obligation to pay severance benefits in accordance with the Pre-Existing Severance Policy will not vary or contradict the express terms of the offer letters. In *Camp*, the implied-in-fact agreement

10

advocated by plaintiffs clearly and unmistakably contradicted the terms of the parties' express written understanding. That is not the case here.

## V.    PLAINTIFFS' IMPLIED-IN-FACT CONTRACT CLAIMS DO NOT MODIFY OR AMEND THE TERMS OF THEIR EXPRESS EMPLOYMENT CONTRACTS

In reliance on *Tomlinson v. Qualcomm, Inc.*, 97 Cal.App.4[th] 934 (2002), Option One and Block maintain that Plaintiffs' attempts to establish an implied-in-fact contractual entitlement to benefits under the Pre-Existing Severance Policy constitutes an improper modification of the offer letters signed by Plaintiffs. *Tomlinson* is distinguishable. *Tomlinson* was a wrongful termination case where the plaintiff and employer had entered into an express written agreement providing clearly and unmistakable that the employment relationship was "at will" and the agreement also contained a provision expressly limiting amendments of the "at will" provision to writings signed by the employer's Chairman of the Board. *Id.* at 938. The court in *Tomlinson* first held that the express "at will" provision precluded any implied contrary agreement limiting the circumstances under which plaintiff could be terminated. *Id.* at 944. The court then rejected plaintiff's argument that a subsequently enacted "termination of employment policy" amended the "at will" provision because the policy did not constitute a writing signed by the employer's Chairman of the Board. *Id.* at 945-946. Here, in

contrast, the purportedly "integrated" offer letters are completely silent as to severance benefits and, thus, Plaintiffs implied contract claims for severance do not conflict with or vary the terms of the offer letters. Furthermore, since the offer letters are silent with respect to severance benefits, Plaintiffs do not need or seek to amend the offer letters.

The record also supports the conclusion Option One waived the requirement that any modifications to the offer letters must be "in writing by the Vice President, Human Resources of Option One Mortgage." Plaintiff Drake's initial offer letter from Option One was signed by "Kristina Hintgen, VP, Human Resources."[3] On three subsequent occasions, Plaintiff Drake was promoted and received pay increases and these modifications or amendments to her initial offer letter were set forth in new offer letters. In each instance, the new offer letters were signed on behalf of Option One not by the Vice President of Human Resources, but by "Rita Bernaza, Senior HR Generalist."[4] Plaintiff Staggs' initial offer letter was also signed by "Kristina Hintgen, VP, Human Resources."[5] He was promoted twice with pay increases and these modifications to his initial offer letter were set forth in new offer letters. With regard to Plaintiff Staggs' first promotion, the new offer

---

[3] ER IV 623-624.

[4] ER IV 626-633.

[5] ER IV 780-781.

letter was signed by "Rita Bernaza, Senior HR Generalist."[6]  The offer letter for his second promotion was not signed by anyone on behalf of Option One.  Although the new offer letter had a signature block for someone from "Option One Mortgage Human Resources," the signature block was left blank.[7]

The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.  *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 678 (2000).  The waiver may be implied, based on conduct indicating an intent to relinquish the right.  Thus, "'California courts will find waiver when a . . . party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'"  *Old Republic, supra*, 80 Cal.App.4th at 678; see also *Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal.App.3d 151, 158 (1971); *Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal.App.4th 1020, 1038 (2003); *Wagner v. Glendale Adventist Medical Center*, 216 Cal.App.3d 1379, 1388 (1989); *Biren v. Equality Emergency Medical Group*, Inc., 102 Cal.App.4th 125, 141 (2002).  Based on the foregoing, Plaintiffs submit that Option One, by engaging in repeated instances of inconsistent conduct, waived the requirement that

---

[6] ER IV 783-784.

[7] ER IV 786-787.

modifications to the offer letters could only be "in writing by the Vice President, Human Resources of Option One Mortgage."

## VI.   PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON THEIR IMPLIED-IN-FACT CONTRACT CLAIMS AGAINST OPTION ONE

### A.    The District Court Placed An Incorrect Burden Of Proof On Plaintiffs

As noted in Plaintiffs' Opening Brief, the District Court placed on Plaintiffs the incorrect and insurmountable burden of proving "that an implied-in-fact term of their employment agreements with Option One gave them a contractual entitlement to severance pay *in the specific circumstances of being transferred from Option One to comparable employment with AHMSI after an asset sale.*" The District Court misconstrued Plaintiffs' case. In summary judgment procedure, the pleadings establish the relevant issues to be considered in ruling on the motion, i.e., the "materiality" of particular facts is determined by the pleadings. See *Schwartzer, Tashima & Wagstaff,*    CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL, section 14:27.1, pg. 1410 (The Rutter Group 2011); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Because Plaintiffs never alleged an implied-in-fact contract providing specifically

that Plaintiffs would receive severance benefits if they were offered comparable employment by AHMSI in connection with the sale, whether such a contract was formed or existed was not "material" to Plaintiffs' case. What Plaintiffs did allege, and what Plaintiffs submitted substantial evidence to establish, is that Option One had a severance policy and practice that afforded severance benefits to employees who were "separated" from Option One (the "Pre-Existing Severance Policy"), that an implied-in-fact contract was created that entitled Plaintiffs to benefits pursuant to the Pre-Existing Severance Policy, and that, despite the adoption of the OOMC Severance Plan (which excluded benefit eligibility), Plaintiffs remained entitled to benefits under the Pre-Existing Severance Policy because, at the close of the sale to AHMSI when their employment with Option One came to an end, Plaintiffs were "separated" from Option One within the meaning of the Pre-Existing Severance Policy. As framed by the pleadings, Plaintiffs submitted sufficient evidence to withstand summary judgment on the "material" aspects of their implied-in-fact contract claims against Option One. Plaintiffs detailed that evidence in their Opening Brief and will not rehash those arguments here.

**B.     The Pre-Existing Severance Policy Is Sufficiently Definite And Certain**

Relying on *Weddington Prod., Inc. v. Flick*, 60 Cal.App.4[th] 793 (1998) and *Ladas v. Cal. State Auto Ass'n*, 19 Cal.App.4[th] 761 (1993), Option One contends

15

that the terms of the Pre-Existing Severance Policy are too uncertain and indefinite to form an enforceable contract. Option One did not make this argument at the District Court level.[8] Since Option One is making this argument for the first time on appeal, it should be disregarded. *Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011). Even assuming Option One did not waive the issue, the evidence submitted by Plaintiffs regarding the Pre-Existing Severance Policy "provide[s] a basis for determining the existence of a breach and for giving an appropriate remedy." *Weddington, supra*, 60 Cal.App.4th at 811. The appropriate remedy can be determined from the formulas in the Severance Calculator or the Severance Calculation Worksheets, i.e., the applicable number of weeks of salary multiplied by the employee's years of service. The existence of a breach can also be determined. Based on the substantial evidence submitted by Plaintiffs, they were entitled to benefits under the Pre-Existing Severance Policy if their employment was "separated" from Option One and they signed a release agreement. Plaintiffs were "separated" from Option One within the meaning of the Pre-Existing Severance Policy when the sale to AHMSI closed, regardless of the fact they accepted comparable positions with AHMSI, their new employer. Nevertheless, Plaintiffs were denied the vested benefits they had already earned and accrued under the Pre-Existing Severance Policy.

---

[8] ER III 545-570.

## VII. PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON THEIR PROMISSORY FRAUD CLAIMS AGAINST OPTION ONE

The District Court's grant of summary judgment on the promissory fraud claim against Option One was premised on the conclusion Plaintiffs failed to establish a promise or contractual entitlement to severance in the specific event they accepted comparable offers of employment at AHMSI after the asset sale. As noted above, this was an incorrect burden. Plaintiffs alleged and submitted substantial evidence regarding the existence of the Pre-Existing Severance Policy, that an implied-in-fact contract was created that entitled Plaintiffs to benefits pursuant to the Pre-Existing Severance Policy, and that, despite the adoption of the OOMC Severance Plan, Plaintiffs remained entitled to benefits under the Pre-Existing Severance Policy because, at the close of the sale to AHMSI when their employment with Option One came to an end, Plaintiffs were "separated" from Option One within the meaning of the Pre-Existing Severance Policy. Since Plaintiffs' evidence created a genuine issue of fact on these issues, summary judgment on the promissory fraud claim was inappropriate. Option One also maintains, as it did below, that Plaintiffs could not base their fraud claims on a promise directly at variance with the express terms of Plaintiffs' purportedly "integrated" offer letters. Option One maintains that, as a matter of law, Plaintiffs

17

cannot establish reasonable reliance on a promise at adds with their express, written employment contracts. As noted above, however, genuine issue of fact exist with respect to whether the offer letters were "integrated" with respect to severance terms. It is also undisputed the offer letters are completely silent with respect to severance. Option One also contends for the first time on appeal that Plaintiffs proffered no evidence of any "knowledge of falsity" or "intent to defraud." Option one did not present this argument at the District Court level.[9] Since Option One is making this argument for the first time on appeal, it should be disregarded. *Baccei, supra,* 632 F.3d at 1149.

## VIII. PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON THEIR LABOR CODE AND UCL CLAIMS AGAINST OPTION ONE

The District Court's grant of summary judgment on the statutory claims against Option One was premised on the same erroneous conclusion that Plaintiffs were required to establish a contractual entitlement to severance in the specific event they accepted comparable offers of employment at AHMSI after the asset sale. As set forth above, this was an incorrect burden of proof. The evidence

---

[9] ER III 545-570.

submitted by Plaintiffs regarding the existence and terms of the Pre-Existing Severance Policy precluded summary judgment on the Labor Code and UCL claims.  Additionally, the settled meaning of  "willful," as used in Labor Code section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1201 (2008); *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7–8 (1981).  "[T]he employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Barnhill, supra*, 125 Cal.App.3d at 7.  Pursuant to 8 C.C.R. section 13520, "[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  Under section 13520(a), "[a] 'good faith dispute' that any wages are due occurs *when an employer presents a defense*, based in law or fact which, if successful, would preclude any recover on the part of the employee."  As an affirmative defense, the burden on this issue is on Option One.  It is not Plaintiffs' burden to disprove that Option One raised a "good faith dispute" that any severance benefits were due.  Accepting Plaintiffs' evidence as true and drawing all reasonable inferences from the evidence in Plaintiffs' favor,

Plaintiffs submit that genuine issues of material fact preclude summary judgment on the issue whether Option One presented a "good faith dispute" defense.

## IX.  PLAINTIFFS SUBMITTED SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY JUDGMENT ON THEIR INTENTIONAL INTERFERENCE CLAIMS AGAINST BLOCK

The grant of summary judgment on the intentional interference claim against Block was, again, premised on the same erroneous conclusion that Plaintiffs were required to establish a contractual entitlement to severance in the specific event they accepted comparable offers of employment at AHMSI after the asset sale. As set forth above, this was an incorrect burden of proof. The evidence submitted by Plaintiffs regarding the existence and terms of the Pre-Existing Severance Policy precluded summary judgment on the intentional interference claim. As set forth in their Opening Brief, Plaintiffs also submitted sufficient evidence to withstand summary judgment concerning Block's knowledge of the existence of the Pre-Existing Severance Policy and also that Block induced a breach of the Pre-Existing Severance Policy by requiring Option One to repudiate the Pre-Existing Severance Policy and adopt the OOMC Severance Plan. Plaintiffs will not restate those facts and argument here.

With regard to the financial interest privilege, it is an affirmative defense. As such it was Block's burden to submit evidence establishing each of the privilege's essential elements. It was not Plaintiffs' burden to submit evidence negating the defense. See *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). In support of the contention the privilege applies, Block places primary reliance on *Stonebrae, L.P. v. Toll Bros., Inc.*, 2008 WL 2157000 (N.D. Cal. 2008). In support of its holding that the financial interest privilege applies to claims for inducing breach of contract, the court in *Stonebrae* relied upon *Collins v. Victor Manor, Inc.,* 47 Cal.2d 875 (1957), *Kozlowsky v. Westminster Nat'l Bank,* 6 Cal.App.3d 593 (1970), *Culcal Styleco, Inc. v. Vornado, Inc.,* 26 Cal.App.3d 879 (1972), and *Sade Shoe Co. v. Oschin & Snyder,* 162 Cal.App.3d 1174 (1984), cases on which Block also relies. The continued validity of these antiquated cases, as well as the correctness of the rulings in *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal.App.4[th] 344 (2005) and *Cabanas v. Gloodt Assocs.*, 942 F.Supp 1295 (1996), is doubtful given the California Supreme Court's most recent "intentional interference" cases, *Quelimane Company., Inc. v. Stewart Title Guarantee Co.,* 19 Cal.4[th] 26 (1998) and *Penna v. Toyota Motor Sales, USA, Inc.,* 11 Cal.4[th] 376 (1995).

As Plaintiffs have already noted in their Opening Brief, in *Quelimane* and *Penna* the California Supreme Court emphasized the need to draw and enforce a

sharp distinction between claims for the tortious disruption of an *existing* contract

and claims that a *prospective* economic relationship has been interfered with.

*Penna,* 11 Cal.4[th] at 392; *Quelimane,* 19 Cal.4[th] at 55-56. *Stonebrae* and the other

cases on which Block relies tend to treat the two torts as analytically unitary and

deriving from a common principle. *See, e.g., Sade Shoe,* 162 Cal.App.3d at 1180,

fn. 3 (blurring the analysis and incorrectly noting that "[t]he tort of interference

with contract is *merely a species of the broader tort* of interference with

prospective economic advantage"). A doctrine that blurs the analytical line

between interference with an existing contract and interference with economic

relations less than contractual not only invites both uncertainty in conduct and

unpredictability of its legal effect, it promotes the idea that the interests invaded by

the two torts are of nearly equal dignity. They are not. "The courts provide a

damage remedy against third party conduct intended to disrupt an existing contract

precisely because the exchange of promises resulting in such a formally cemented

economic relationship is deemed worthy of protection from interference by a

stranger to the agreement. *Penna,* 11 Cal.4[th] at 392. Accordingly, the court in

*Penna* rejected "the notion that the two torts are analytically unitary and derive

from a common principle," rejected the notion that "inducing the breach of an

existing contract is simply a subevent of the 'more inclusive' class of acts that

interfere with economic relations," and held that courts must therefore "firmly

22

distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements." *Penna,* 11 Cal.4[th] at 392. In light of these distinctions, the court in *Quelimane* held that, unlike prospective economic relations, intentionally inducing or causing a breach of an existing contract is "a wrong in and of itself." *Id.* at 56.

The compelling implication from *Penna* and *Quelimane* is that the law in California has been brought firmly in line with the distinctions drawn between the two torts in both the First and Second Restatements. *See, Korea Supply Co. v. Lockheed Martin Corp,* 29 Cal.4[th] 1134, 1155-1158 (2003) (discussing *Penna* and *Quelimane* in depth and adopting the Second Restatement to further define the contours of each tort). Plaintiffs submit that, if squarely presented with the issue, the California Supreme Court would conclude that the financial interest privilege simply does not apply to claims for intentionally inducing a breach of an existing contract.[10]

Even assuming the privilege applies to inducing breach of an existing contract, which it does not, genuine issues of material fact nevertheless preclude its

---

[10] As noted in *Stonebrae,* the comments to both the First and Second Restatements of Torts provide that the financial interest privilege does not apply to "the causing of a breach of contract." *Id.* at *7; *see also,* Restatement (First) of Torts § 769, comment d; Restatement (Second) of Torts § 769, comment b.

application in this case. One inducing a breach of contract in order to protect a financial interest must act in good faith. *Richardson v. La Rancherita,* 98 Cal.App.3d 73, 80-81 (1979). On this issue the facts are disputed. That Block essentially maintains it did not act out of spite or ill-will is of no consequence. "The presence or absence of ill-will . . . is immaterial except as it indicates whether or not an interest is actually being protected." *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 36 (1941). Block also failed to submit any evidence concerning whether Block acted to protect its own interest or Option One's. The tort liability of an owner depends on whether the owner was acting to protect the interests of the owned entity. Thus, Block would enjoy a qualified privilege under section 769 to terminate a contract to which Option One is a party only where Block's primary purpose in inducing the breach was to further Option One's interest. See *Webber v. Inland Empire Investments,* 74 Cal.App.4th 884, 908 (1999); *Wanland v. Los Gatos Lodge, Inc.,* 230 Cal.App.3d 1507, 1522 (1991); *Chiganti v. 12 Phone Intern., Inc.,* 635 F.Supp.2d 1074-1075 (N.D. Cal. 2007); *Lowell v. Mother's Cake & Cookie Co.,* 79 Cal.App.3d 13, 21-22 (1978). Again, Block failed to submit any evidence on this issue. As a final matter, the privilege that arises by reason of section 769 is at most a qualified one dependent for its existence upon all the circumstances of the case. It is essentially a state-of-mind privilege. *GHK Associates v. Mayer Group, Inc.,* 224 Cal.App.3d 856, 883 (1990). Because

24

resolution of the issue turns on Block's predominant purpose in inducing the breach of the contract, and because evidence of Block's primary purpose in adopting the OOMC Severance Plan is absent or in dispute, this Court cannot find the privilege applies as a matter of law.

## X.    SEVERANCE IS A VESTED BENEFIT UNDER CALIFORNIA LAW

Option One contends that severance is not a vested benefit under California law.  In partial support of this proposition, Option One relies on a host of ERISA cases, i.e., *Joanou v. Coca-Cola Co.*, 26 F.3d 96 (9th Cir. 1994); *Modelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1378 nt. 6 (9th Cir. 1994); *Reichelt v. Emhart Corp.*, 921 F.2d 425 (2d Cir. 1990); *Parker v. Kraft Foods Global, Inc.*, 2010 WL 1929555 (W.D. N.C. 2010); and *FSLIC v. Quinn*, 711 F.Supp. 366 (N.D. Ohio 1989).   These cases are inapposite because, as set forth above, the Pre-Existing Severance Policy is not an ERISA plan.  The other cases relied upon by Option one are also inapposite and unpersuasive on the issue.  In *Powell v. California Dept. of Employment*, 63 Cal.2d 103 (1965), the court merely held that in enacting section 1265 of the Unemployment Insurance Code, the Legislature intended to exclude severance pay as "wages" within the meaning of that code, and that petitioners were therefore entitled to their unemployment compensation benefits without the imposition of any limitation due to their receipt of such pay. *Id.* at 108-109.   The case has little, if any, precedential value with respect to

whether severance benefits vest under the circumstances presented in this case. *Lawson v. Lawson*, 208 Cal.App.3d 446 (1989), likewise has little to no precedential value. That case only involved whether severance benefits under the particular plan at issue were "vested" for purposes of community property distribution. *Id.* at 452-453.

Based on *Chinn v. China Nat. Aviation Corp.,* 138 Cal.App.2d 98 (1955), *Chapin v. Fairchild Camera and Instrument Corp.,* 31 Cal.App.3d 192 (1973), *Suastez v. Plastic Dress-Up Co.*, 31 Cal.3d 774 (1982), and the state court cases discussed below, this Court should have no difficulty concluding that severance pay constitutes a "vested benefit" under California law. As noted in Plaintiffs' Opening Brief, the court in *Chinn* observed that severance pay constitutes "additional compensation" to employees who render continuous and efficient service. Characterized as such, the court held that severance pay is not a mere gift or gratuity bestowed by the employer, but is, in effect, additional compensation for services performed. *Chinn,* 138 Cal.App.2d at 100. Similarly, the *Chapin* court observed that severance pay "is a kind of accumulated compensation for past services and a material recognition of their past value." *Chapin,* 31 Cal.App.3d at 198. Accordingly, the *Chapin* court held that severance pay "concerns the past, not the future, and *once it is earned, it becomes payable no matter what may thereafter happen.*" *Id.* at 198-199 (emphasis added). In *Suastez*, the California

Supreme Court held that vacation pay is a "vested" benefit within the meaning of Labor Code § 227.3. As with the severance pay addressed in *Chinn* and *Chapin*, the *Suastez* court's holding was based in part on the recognition that "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Id.* at 779. The court observed that vacation pay is similar to pension or retirement benefits which, like severance pay, are another form of deferred compensation. Those benefits "do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee." *Id.* at 780. The *Suastez* court ultimately concluded that "[t]he right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered," that "a proportionate right to a paid vacation 'vests' as the labor is rendered," and that "[o]nce vested, the right is protected from forfeiture." *Id.* at 784. Given the similar nature and purpose of severance pay as described in *Chinn* and *Chapin*, if presented with the issue Plaintiffs submit the California Supreme Court will conclude that severance pay is a "vested benefit."

Plaintiffs' contention is bolstered by an abundance of out-of-state authorities. In each and every case Plaintiffs have located wherein the issue was addressed, the court held that severance pay, as a form of deferred compensation, is a "vested" benefit that accrues and is earned as the employee renders continued service. These courts also recognize that, once vested, severance benefits cannot

be forfeited or taken away, and that purported contract modifications adopted by the employer that would work such a forfeiture can only operate prospectively. For example, in *Bolling v. Clevepack Corp.*, 484 N.E.2d 1367 (Ohio App. 1984), the court held that, as deferred compensation, severance pay accrues while it is being earned during the course of the employment relationship. Once earned through their continued work, the employees' right to receive severance pay is "vested." Once earned, that right (and the amount of pay theretofore accrued) cannot thereafter be retroactively modified, diminished or eliminated by the employer. *Id.* at 1375-1376 (citing numerous supporting cases). Likewise, in *Kulins v. Malco*, 459 N.E.2d 1039 (Ill. App. 1984), the court observed that, because of the benefit to the employees and the character of the inducement by the employer, severance pay is characterized as a form of deferred compensation, earned in part each week that the employee works during the term of the contract and payable on discharge from employment, provided such discharge is not induced by misconduct. The court noted that severance pay is a benefit for which employees work as much as they work for any other benefit held out to them as compensation by the employer, and one which accrues during each work year that the agreement is in effect, not merely on the date that it becomes payable. Accordingly, the court held that when services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or any

other form of compensation, and the lack of a promise to vest does not revoke the employer's obligation to pay. *Id.* at 1043-1045 (citing numerous supporting cases). In addition to *Bolling* and *Kulins* and the cases they discuss and rely upon, an abundance of other cases support the foregoing treatment of severance pay as a "vested" benefit. See *Johnson v. Allied Stores Corporation*, 679 P.2d 640 (Id. App. 1984); *In re Joy Global, Inc.*, 381 B.R. 603 (D.C. Del. 2007); *Owens v. Press Publishing Co.*, 120 A.2d 442 (N.J. App. 1956); *Helle v. Landmark, Inc.*, 472 N.E.2d 765 (Ohio App. 1984); *Horton v. Prepared Media Lab., Inc.*, 997 P.2d 864 (Or. App. 2000); *Langdon v. Saga Corp.*, 569 P.2d 524 (Okl. App. 1976); *Hercules Powder Co. v. Brookfield*, 53 S.E.2d 804 (Va. App. 1949); *In re Jeannette Corp.*, 118 B.R. 327 (W.D. Pa. 1990); *Botany Mills, Inc. v. Textile Workers Union of America*, 141 A.2d 107 (N.J. App. 1958).

Based on the foregoing authorities, this Court should have no difficulty concluding that severance pay constitutes a "vested benefit" under California law. Plaintiffs have submitted substantial evidence that the post-March 17, 2008 FAQ documents and the OOMC Severance Plan communicated to Plaintiffs on April 15, 2008 modified the Pre-Existing Severance Policy and worked a forfeiture of the severance benefits Plaintiffs had already earned and accrued under the Pre-Existing Severance Plan. Therefore, the FAQ documents and their memorialization in the OOMC Severance Plan interfered with vested employee benefits within the

29

meaning of *Asmus v. Pacific Bell,* 23 Cal.4[th] 1, 11-12, 17 (2000). Accordingly, the severance benefit eligibility modifications made by the FAQs and the OOMC Severance Plan can operate prospectively only and Plaintiffs remain entitled to recover the benefits they had already earned and accrued under the Pre-Existing Severance Policy.

## XI.    CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, as well as those stated in their Opening Brief, Plaintiffs respectfully request that the Court reverse the District Court's summary judgment order in favor of Option One and Block, vacate the judgment entered thereon, and remand the case to the District Court for further proceedings including trial.


Dated:  October 24, 2012          MOWER & CARREON, LLP


                              By ____/s/ James A. Burton_____
                                  Patrick A. Carreon, Esq.
                                  James A. Burton, Esq.
                                  Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(b) of the Federal Rules of Appellate procedure. This brief uses a proportional typeface and 14-point font, and contains 6,971 words.


Dated:  October 24, 2012          MOWER & CARREON, LLP


                                  By ____/s/ James A. Burton_____
                                      Patrick A. Carreon, Esq.
                                      James A. Burton, Esq.
                                      Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

I hereby certify and declare under penalty of perjury that the following statements are true and correct.

1.    I am over the age of 18 years and am not a party to the within cause. My business address is 8001 Irvine Center Drive, Suite 1450, Irvine, California 92618.

2.    I hereby certify that on October 24, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

3.    I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

EXECUTED this 24th day of October, 2012, at Irvine, California.

_____

s/ *Amber Francis*